Lewis HILL, Appellant,

v.

Darrell HOUCK, and any other person or persons having the custody of the Petitioner, Appellees.

No. 54293.

Supreme Court of Iowa.

March 16, 1972.

Stanford L. Trumbower, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Allen J. Lukehart, Asst. Atty. Gen., Robert Stewart, County Atty., for appellees.

MASON, Justice.

This is an appeal from denial of a writ of habeas corpus. Lewis Hill filed a petition for the writ to test legality of his arrest and detention under executive warrant issued by the Governor of Iowa in extradition proceedings emanating from the state of Missouri. At the conclusion of an evidentiary hearing in the Decatur district court, the petition was denied and the Decatur county sheriff was ordered to deliver Hill to the designated executive agent from Missouri in accordance with the rendition warrant.

Some factual background leading to the habeas corpus proceedings will be helpful.

Hill was initially "picked up" without a warrant in Leon, Iowa, May 21, 1969, by Darrell Houck, Decatur county sheriff, in connection with an alleged break-in in Missouri. It appears Don Stockwell, Harrison county Missouri sheriff, accompanied Houck on this occasion. May 26 Houck again "picked up" Hill. This time the Iowa sheriff had a warrant from Missouri, but Hill refused to go to Missouri.

Hill was again arrested in connection with the Missouri offense June 20, when the Decatur county sheriff accompanied by Stockwell came to Hill's place of employment in Leon. Hill was advised he had to go to Missouri and was given a paper by the Missouri sheriff to read. Hill maintains he did not read the paper or understand it and was not advised by either officer of his right to be taken before a judge before being taken to Missouri. In Hill's opinion he was under arrest. The Missouri sheriff and his deputy returned Hill to Bethany where he was processed in the sheriff's office before being taken before a magistrate. After talking to the magistrate, Hill was returned to jail. The following morning he was again taken before the magistrate and told the Missouri authorities had to release him. The sheriff's office brought Hill back to the Missouri-Iowa line where they released him.

Sometime later, not entirely clear from the record, Hill was arrested in Leon under the rendition warrant in the extradition proceedings.

In petition for habeas corpus Hill alleged he was not in the state of Missouri at the time of the crime charged and was not a fugitive from the state of Missouri.

Petitioner testified at the evidentiary hearing he was in Leon, Sunday, December 15, 1968 and the following day and at no time during this period was he in the state of Missouri. (The Missouri offense is alleged to have occurred December 16.)

Petitioner was able to recall Sunday the 15th since his automobile brakes failed about 10 p. m. when he ran into the back end of his mother-in-law's car parked in her driveway at Leon. Hill said he stayed at his mother-in-law's house after the collision until shortly before 11 p. m. when he returned to his parents' home. He awoke the next morning around 11 a. m., had a meal and attempted to fix his brakes. At 9 p. m. he went to his mother-in-law's house to answer a telephone call from his wife who was then in Michigan. After talking to his wife for 45 minutes to an hour, he stayed at his mother-in-law's home and watched television till 11 or 11:30.

The mother-in-law testified that she recalled petitioner being at her home December 15, 1968, after he had struck her automobile and that he remained there some time. She saw him again the next day around 9 p. m. when he came to answer a telephone call from her daughter. She said Hill remained at the house for some time and left between 11 and 12.

Darrell Houck, the only witness called on behalf of defendant, testified relative to picking up Hill on the occasions mentioned but did not attempt to place him in Missouri at any time.

The trial court found evidence offered by petitioner was not "competent, sufficient, independent proof of the petitioner not being within the State of Missouri on the date of the alleged crime to rebut the prima facie showing that he was, as set forth in the extradition papers."

Petitioner assigns three errors relied on for reversal. Summarized, he asserts the trial court erred in finding him to be a fugitive from justice.

■ I. Our review on appeal in habeas corpus cases except when custody of children is involved is not de novo and this court is bound by findings of the trial court for which there is substantial evidentiary support. We will consider only assigned errors and review only those matters which were properly raised and preserved below. Evans v. Rosenberger, 181 N.W.2d 152, 154 (Iowa 1970), and authorities cited.

■ As articulated in Clayton v. Wichael, 258 Iowa 1037, 1043, 141 N.W.2d 538, 541, and Evans v. Rosenberger, 181 N.W.2d at 155, proceedings for the interstate extradition of criminals are controlled by federal law, being provided for directly by the United States Constitution,

Article IV, section 2, and implemented by federal legislation, 18 U.S.C.A., section 3182 [62 Stat. 822 (1948)]. A majority of the states, including Iowa, have legislated their own extradition machinery, subject to the limitation of comporting with the standards of federal law, and have adopted the "Uniform Criminal Extradition Act," now codified in chapter 759, The Code.

We are not concerned in the case before us with section 759.6, The Code. By this section, extradition procedures may apply to a situation where the accused was not physically present in the demanding state at the time the offense was committed, if his act, from whatever state he was in, results in a crime in the demanding state. See Clayton v. Wichael, 258 Iowa at 1042–1043, 141 N.W.2d at 541.

■ Section 759.2 makes clear it is the duty of the governor to have arrested and delivered up to the demanding state any person charged in that state with treason, felony or other crime, who has fled from justice and found in Iowa. In some jurisdictions, this "duty" has been said, however, not to be absolute or unqualified, but to be dependent on the circumstances of each case. In any event, it is to be faithfully discharged. Interstate Extradition of Fugitives from Justice, 19 Iowa L.Rev. 462; 1 Bailey on Habeas Corpus, section 135; 35 C.J.S. Extradition § 4, and citations therein. Although section 759.2 states, " * * * it is the duty * * * *", section 759.4, which empowers the governor of the asylum state to order an investigation of the matter in his discretion would suggest the "duty" under the uniform act is also a qualified one.

■ When the governor of the asylum state receives the authenticated indictment or complaining affidavit from the governor of the demanding state, there are only two inquiries relevant to the decision to issue a rendition warrant for the arrest of the accused. The first is whether the accused has been substantially charged with a crime under the laws of the demanding state. The second is whether the person demanded is a fugitive, that is, whether he was within the demanding state at the time the crime charged is alleged to have been committed. The first is a question of law; the second, a question of fact. See Evans v. Rosenberger, 181 N.W.2d at 155.

■ On habeas corpus review of the executive order in a court of the asylum state, the inquiry is limited to the same two questions. Bruzaud v. Matthews, 93 U.S. App.D.C. 47, 207 F.2d 25, 26. See also Roberts v. Reilly, 116 U.S. 80, 95, 6 S.Ct. 291, 29 L.Ed. 544, 549.

The governor's warrant is prima facie evidence that accused is a fugitive from justice. Seely v. Beardsley, 194 Iowa 863, 865–866, 190 N.W. 498, 500; Bicknell v. Farley, 232 Iowa 464, 466–467, 5 N.W.2d 831, 832–833. Authorities from other jurisdictions making similar statements of law in extradition proceedings include Harding v. People, 161 Colo. 571, 423 P.2d 847, 849; Dickerson v. State, 267 A.2d 881, 882 (Del.Supr.1970); Solomon v. Warden, Baltimore City Jail, 256 Md. 297, 260 A.2d 68, 70; State ex rel. Hart v. District Court, 485 P.2d 698, 700–702 (Mont.1971); 39 C.J.S. Habeas Corpus § 39(d).

■ Where the petitioner for habeas corpus tenders the issue of his being a fugitive from justice, the burden of overcoming the presumption raised by an executive determination in an asylum state devolves upon the petitioner to show either that he was not within the demanding state at the time the offense charged was alleged to have been committed or that he has not since left the state. See Seely, v. Beardsley and Bicknell v. Farley, both supra.

■ In an extradition proceeding where the accused seeks a writ of habeas corpus his burden is a strenuous one, not being satisfied by a mere preponderance of the evidence but requiring evidence that "clearly and satisfactorily" or "conclusive-

ly" proves he is not a fugitive from justice. Seely v. Beardsley, 194 Iowa at 866, 190 N.W. at 500; Bicknell v. Farley, 232 Iowa at 466–467, 5 N.W.2d at 832–833. This appears to be the quantum of proof required in the majority of jurisdictions considering the question although in Maryland and the federal courts, the accused's burden is to establish his absence from the demanding state beyond a reasonable doubt.

■ In order to be a fugitive from justice subject to extradition, the first requirement is that one be charged with a crime. 19 Iowa L.Rev., supra, 463. A second historical requirement is that the individual be in the demanding state at the time the crime charged was alleged to have been committed. Clayton v. Wichael, 258 Iowa at 1039, 141 N.W.2d at 539; Seely v. Beardsley, 194 Iowa at 866, 190 N.W. at 500; 31 Am.Jur.2d, Extradition, section 15. Flight from one state to another, whether consciously avoiding the prosecution or not, is another element necessary to constitute a "fugitive from justice." See 19 Iowa L.Rev. at 463. And finally, the individual must be found in the asylum state and refuse to return to the demanding state voluntarily. Evans v. Rosenberger, 181 N.W.2d at 155; Clayton v. Wichael, 258 Iowa at 1039, 141 N.W.2d at 539.

■ II. Petitioner's evidence at most creates a conflict or raises a disputed question of fact. We will not weigh the evidence under the limited extent of our review. Evans v. Rosenberger, 181 N.W.2d at 157. Petitioner's contention asserted in his second assignment of error is without merit since the trial court did not err in its finding that Hill was a fugitive from justice.

■ In the light of the authorities cited in division I, supra, the trial court did not err in placing the burden of proof to establish he was not a fugitive from justice as he asserts in his third assignment.

This statement from Smith v. State of Idaho, 373 F.2d 149, 156–157 (9 Cir.), is apposite:

"Admittedly, the prisoner held for extradition has a heavy burden of proof. But this arises legitimately from the nature of an extradition proceeding, since essentially the court is reviewing the factual determination of the governor as to the presence of the accused in the demanding state, and the guilt or innocence of the accused is not in question.

" 'The inquiry whether the appellant is a fugitive from justice is one of fact, to be resolved by the [governor] to whom the demand for extradition is made, and his judgment thereon is not subject to judicial impeachment by habeas corpus unless it conclusively appears that the person sought to be extradited could not be a fugitive from justice under the law.' Brewer v. Goff, 138 F.2d 710, 712 (10th Cir. 1943)."

III. In one brief point under his second assignment defendant asserts a petitioner in a habeas corpus proceeding must be granted the right to confront and cross-examine any witness or other evidence against him; failure to grant this right is a denial of the petitioner's right under amendment 14 of the federal constitution.

Petitioner's contention presents the question whether the presumptive effect of the rendition warrant when supported by affidavits accompanying the demand for extradition is sufficient in itself to repel the positive testimony of the appellant that he was not present in the demanding state? Stated another way: When the appellant takes the stand, and, while under oath and subject to cross-examination, positively declares that he was not present in the demanding state, must the demanding state present some testimony to contradict the declaration or may it merely rest upon the extradition papers and the affidavits therein?

Petitioner relies on State v. Limberg, 274 Minn. 31, 142 N.W.2d 563, in support

of his position. In the cited case the accused offered the only testimony before the district court. The Supreme Court remanded the case with directions to vacate the order to discharge the writ and allow the demanding state a period of time in which to produce evidence of defendant's presence in the demanding state at the time the crime charged was alleged to have been committed.

The court held: "* * * [W]here an appellant positively and unequivocally testifies that he was not present in the demanding state at the time of the alleged offense, that state must present some testimony that will be subject to cross-examination by appellant's counsel to support the allegation that he was present. * * *."

On the other hand, the court in Smith v. State of Idaho, 373 F.2d at 157, expressed this statement of law in rejecting a similar contention:

"Appellant next argues that the use of *ex parte* affidavits was improper to prove substantive facts in a habeas corpus proceeding, since these affidavits constituted hearsay testimony and were not subject to cross-examination. The use of such affidavits in extradition proceedings has long been allowed.

" 'The principal complaint as to the discharge of the writ is based upon the consideration by the Governor of Louisiana, and the admission in evidence on the hearing below, of affidavits by residents of Utah that the appellant, whose picture was attached to each of such affidavits, was the person who committed the alleged crime. Such evidence properly may be considered in determining whether the person sought to be surrendered is or is not the one charged with crime, and whether he was or was not in the demanding state when the crime is alleged to have been committed.' United States ex rel. Austin v. Williams, 12 F.2d 66, 67 (5th Cir. 1926).

"In Munsey v. Clough, 196 U.S. 364, 374, 25 S.Ct. 282, 49 L.Ed. 515 (1905), the Court accepted an *ex parte* affidavit of one Whitney to show that the accused was in the demanding state at the time the crime was committed. This court has specifically allowed the use of such affidavits in a return to the show cause order in habeas corpus proceedings. See Lewis v. Johnston, 112 F.2d 451, 453 (9th Cir. 1940); Franzeen v. Johnston, 111 F.2d 817, 819–820 (9th Cir. 1940); Walker v. Johnston, 109 F.2d 436, 438 (9th Cir. 1940). The reason for allowing such hearsay evidence is sound—that in extradition proceedings, it is often impractical to transport the witnesses from the demanding to the asylum state to have their testimony in person."

Certiorari was denied in the Smith case, 388 U.S. 919, 87 S.Ct. 2139, 18 L.Ed.2d 1364. It is cited for support for this statement in Walden v. Mosley, 312 F.Supp. 855, 862 (N.D.Miss., Delta Division):

"Ex parte affidavits may be, and customarily are, used in extradition proceedings. They make a prima facie case of the truth of their contents, or as stated by come cases, create a presumption that the crime charged was committed and that the person charged therein committed it, and can be rebutted only by clear and convincing evidence. * * *."

18 U.S.C.A. section 3182 previously mentioned, provides:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and

notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged."

Clayton v. Wichael, 258 Iowa at 1040, 141 N.W.2d at 539, has this statement:

"Section 759.3 provides no demand for extradition of a person charged with crime in another state shall be recognized by the governor unless it is alleged in writing the accused was present in the demanding state at the time of the alleged offense and that he thereafter fled from the state but expressly excepts cases arising under section 759.6. Section 759.3 also sets out the documents which must accompany a demand for extradition. * * *."

In answer to the question presented in this division, we hold neither the federal statute quoted nor section 759.3, The Code, requires that the demanding state present oral testimony under the circumstances developed in the case before us to contradict the accused's evidence he was not present in the demanding state. In support see In re Baker, 310 Mass. 724, 39 N.E.2d 762, 764, cert. den. Baker v. Delay, 316 U.S. 699, 62 S.Ct. 1297, 86 L.Ed. 1768.

Petitioner's constitutional rights were not violated in the respect urged.

IV. In his first assignment Hill contends since appellee failed to file answer of any pleading controverting the facts alleged in his petition for habeas corpus, the trial court erred in ignoring rule 102, Rules of Civil Procedure, which requires that any fact pleaded and not denied in a subsequent pleading shall be deemed admitted except in certain instances not here material.

The assignment presents nothing for review in this court since it was not raised or properly preserved in the trial court.

V. Although petitioner makes no complaint of the matter in his brief and argument, we are not to be understood in reaching our determination of this case as condoning the acts of the officers in taking Hill to Missouri on June 20, 1969, in the manner indicated and in complete disregard of sections 759.10 and 759.25, The Code.

Finding no error, the case is—Affirmed.

All Justices concur, except HARRIS, J., who takes no part.