STATE of Iowa, Appellee,

v.

Raymond Frank MILLER, Appellant.

Raymond Frank MILLER, Appellant,

v.

Edward J. HOLLINRAKE, In His Official Capacity as Monroe County Sheriff, Appellee.

No. 90–1644.

Supreme Court of Iowa.

Feb. 19, 1992.

Linda Del Gallo, State Appellate Defender, and Shari Barron, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas S. Tauber, Asst. Atty. Gen., and William S. Owens, County Atty., for appellee.

Considered by LARSON, P.J., and CARTER, SCHULTZ, NEUMAN, and SNELL, JJ.

SNELL, Justice.

Appellant, Raymond Miller, appeals a district court ruling that dismissed his petition for habeas corpus and ordered his extradition to Arizona. Miller offers two arguments in support of his position. First, he maintains that he is currently suffering from posttraumatic stress disorder, and, as a consequence, the extradition proceedings should be stayed until his health improves. Second, Miller argues that the State failed to offer substantial evidence that he was in Arizona at the time of the alleged offense. Because we find no merit in either contention, we affirm the district court ruling.

On August 20, 1990, a complaint was filed in Monroe County district court alleging that Miller had been charged in Maricopa County, Arizona, with two counts of conspiracy to manufacture drugs and two counts of possession of chemicals and equipment for making methamphetamine. On August 24, 1990, after being taken into custody in Iowa, Miller filed a petition for a writ of habeas corpus, claiming that he was illegally held. On September 26, 1990, the governor of Arizona made a formal demand upon the governor of Iowa for Miller's extradition to Arizona. On October 8, 1990, the governor of Iowa issued a warrant for Miller's extradition.

Prior to the scheduled habeas corpus hearing, Miller filed a motion to stay the extradition proceedings. He claimed that he was suffering from posttraumatic stress disorder and could only obtain adequate medical care in Iowa. His position was that the Veterans Administration Hospital at Knoxville, Iowa, is equipped to treat a disorder such as Miller's but that Arizona has no such facility. The State produced evidence that Arizona can provide whatever health safeguards are appropriate and secure evaluation and treatment for Miller.

Miller asked the district court to stay his extradition proceeding until his condition improved to the point that extradition would not pose a risk to his health. This application for a stay was supported with several letters from his doctors. On the same day, Miller also filed a motion for continuance, asking the court to delay hearing his motion for a stay until Miller's doctors were able to testify in person regarding his condition.

At the habeas corpus hearing, the district court overruled both the motion to continue and the motion to stay Miller's extradition. In addition, the court denied Miller's petition for a writ of habeas corpus and ordered his extradition to Arizona.

I. *The Impact of Posttraumatic Stress Disorder on Extradition Proceedings.*

Since Miller's motion for a stay and his motion to continue were both in the form of a motion for continuance, we shall treat them as such in this appeal. Our review of a district court's decision denying a continuance is for abuse of discretion. *State v. Slayton,* 417 N.W.2d 432, 434 (Iowa 1987). "A continuance may be allowed for any cause not growing out of the fault or negligence of the applicant, which satisfies the court that substantial justice will be more nearly obtained." Iowa R.Civ.P. 183(a) (made applicable to criminal cases by Iowa Rule of Criminal Procedure 20(1)). Miller, as the party requesting the continuance, has the burden of showing that substantial justice will more nearly be obtained if the court grants the request. *State v. Ware,* 338 N.W.2d 707, 714 (Iowa 1983).

Miller contends that the substantial justice standard requires that he be granted a continuance to allow his doctors to testify in person. Miller adds that this additional testimony is necessary to fully explain his condition and the effect on him of interrupting his treatment.

■■■ Assuming arguendo that the foregoing is accurate, we, nevertheless, conclude that the district court ruling denying a continuance was proper. As a general rule, the defendant's poor health or fear for his safety is not a basis for denying extradition. *Lomax v. Cronin,* 194 Colo. 523, 575 P.2d 1285 (1978); *Grano v. State,* 257 A.2d 768 (Del.Super.1969); *State v. De-*

*vine,* 342 So.2d 103 (Fla.App.1977); *Statchuk v. Warden,* 53 Md.App. 680, 455 A.2d 1000, 1005 (1983); *Sheriff v. Randono,* 89 Nev. 521, 515 P.2d 1267 (1973), *cert. denied,* 416 U.S. 956, 94 S.Ct. 1970, 40 L.Ed.2d 307 (1974); *Commonwealth ex rel. Heaton v. Harvey,* 193 Pa.Super. 315, 164 A.2d 123 (1960). "[I]n extradition proceedings, we are concerned with only two narrow questions: (1) Is petitioner charged with the commission of a crime in the demanding state? (2) Is petitioner a fugitive, i.e., was he present within the demanding state when the crime was committed?" *Thurman v. State,* 223 N.W.2d 248, 249 (Iowa 1974).

Since the status of Miller's health was not relevant to the extradition decision, the trial court was correct in denying a continuance for further evidence on that issue. Moreover, as the State correctly notes, if the defendant's health status were to become a primary consideration in making an extradition determination, extradition proceedings would no longer constitute an expeditious means for "each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed." *Michigan v. Doran,* 439 U.S. 282, 287, 99 S.Ct. 530, 534, 58 L.Ed.2d 521, 526–27 (1978). Instead, extradition proceedings would quickly degenerate into a battle of medical experts, with the defendant's experts arguing that the defendant could not be moved and the State's experts arguing to the contrary. This sort of legal maneuvering would frustrate the underlying policy objectives of the extradition process.

## II. *Quantum of Proof Necessary to Show Miller's Presence in Arizona at the Time of the Alleged Offense.*

As noted in division I, when reviewing extradition proceedings we are faced with two questions: "(1) Is the petitioner charged with the commission of a crime in the demanding state? (2) Is the petitioner a fugitive, i.e., was he present within the demanding state when the crime was committed?" *Thurman,* 223 N.W.2d at 249. Miller's contention is that the State failed to show that he was present within the demanding state at the time the alleged crime was committed and his writ of habeas corpus should, therefore, be granted. Our review of this matter is for errors at law. Iowa R.App.P. 4. *Hickey v. State,* 349 N.W.2d 772, 776 (Iowa App.1984). Moreover, we are "bound by the trial court's finding[s] for which there is substantial evidentiary support." *Hickey,* 349 N.W.2d at 776.

We conclude that the State adequately met its burden of showing that Miller was present in Arizona at the time the alleged crime was committed. Issuance of the governor's extradition warrant, standing alone, is prima facie evidence that the defendant is a fugitive and subject to extradition, and the fact of the defendant's presence in the demanding state at the time of the charged act may be presumed from the prima facie force of the issuance of the warrant. *Thurman,* 223 N.W.2d at 249; *Hughes v. Waters,* 204 N.W.2d 599, 600–01 (Iowa 1973); *Hill v. Houck,* 195 N.W.2d 692, 695 (Iowa 1972); *see also Michigan v. Doran,* 439 U.S. at 289, 99 S.Ct. at 535, 58 L.Ed.2d at 527 ("a governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met"). The State may rely upon the presumptive force of the extradition warrant and supporting papers and need not produce oral testimony to prove Miller's presence in Arizona at the relevant time. *Thurman,* 223 N.W.2d at 249; *Hill,* 195 N.W.2d at 696–98.

Once the State establishes a prima facie case for extradition, Miller has the heavy burden of overcoming the State's case by clear and satisfactory evidence that he was not in Arizona at the time in question. *Thurman,* 223 N.W.2d at 249; *Hughes,* 204 N.W.2d at 600; *Hill,* 195 N.W.2d at 695. Miller's bare assertion that he was not in Arizona at the time of the alleged offense clearly does not satisfy this burden.

In contrast, the State has satisfied the requirements for a prima facie showing in an extradition proceeding. The Iowa governor's warrant recited that Miller was a

fugitive from Arizona. The Arizona governor's requisition also recited that Miller was present in Arizona at the time of the alleged offenses and, thereafter, fled to Iowa. Finally, the Arizona prosecutor's application stated that Miller committed the charged offenses while physically present in Maricopa County, Arizona, and that he then left Arizona and fled to Iowa.

The ruling of the district court is affirmed.

AFFIRMED.