# IN THE COURT OF APPEALS OF IOWA

No. 23-1770
Filed March 5, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ROBERT STEVEN THOMPSON II,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Nicholas L. Scott, Judge.

        Robert Thompson appeals his convictions for operating while intoxicated, second offense, and carrying a dangerous weapon while under the influence. **AFFIRMED.**

        S.P. DeVolder of The DeVolder Law Firm, P.L.L.C., Norwalk, for appellant.

        Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney General, for appellee.

        Considered by Schumacher, P.J., Sandy, J., and Bower, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**BOWER, Senior Judge.**

Robert Thompson claims he was not impaired so he cannot be guilty of operating while intoxicated, second offense, and carrying a dangerous weapon while under the influence. A jury found otherwise. Thompson also challenges the district court's denial of his motion to continue to allow him to "forensically review" the officer's bodycam videos, which he contends "were altered in materially misleading and significant ways." Finally, Thompson claims the court abused its discretion at sentencing. Upon our review, we affirm.

## I. Background Facts and Proceedings

At approximately 9:45 p.m. on September 23, 2022, Cedar Rapids police officer Brian Fink was on routine patrol. While driving northbound on I-380, Officer Fink observed a truck in his rearview mirror "passing cars" and "going at a higher rate of speed than the speed limit." The truck continued maneuvering lanes of traffic and passed Officer Fink. Officer Fink, who was driving a marked patrol car, initiated a traffic stop. The truck "wasn't stopping" and was "using its full lane, kind of swerving back and forth." Officer Fink continued following and noticed the truck was "missing a right taillight."

The truck eventually pulled over. Officer Fink identified Thompson as the driver. Thompson was "defiant," had "slurred speech, [which was] a little bit mumbly at some times," and "his answers seemed to be pretty exaggerated." Officer Fink noted Thompson exhibited other signs of intoxication, including "an odor of alcoholic beverages" and watery eyes that were not pursuing smoothly. Thompson was "a little bit unsure on his feet and his balance" as he exited the vehicle. He declined to answer when Officer Fink asked if he had been drinking,

refused to participate in field sobriety tests, and declined to take a preliminary breath test or to provide a breath sample for blood-alcohol testing. Thompson told Officer Fink he had weapons "all over" inside his truck.[1]

Officer Fink placed Thompson under arrest and transported him to the police department. Thompson continued to act belligerently in the patrol car and at the police department. Several other officers who responded to the scene corroborated that Thompson "appeared to be intoxicated" and was acting "unruly." Officer Fink's bodycam and dashcam recorded Thompson's behavior throughout the encounter.

The State charged Thompson with operating while intoxicated, second offense, an aggravated misdemeanor, in violation of Iowa Code section 321J.2(2)(b) (2022), and carrying a weapon while intoxicated, a serious misdemeanor, in violation of Iowa Code section 724.4C. The matter proceeded to trial, during which the jury viewed the bodycam and dashcam videos and heard testimony from Officer Fink, the two other responding officers, the investigator who analyzed the guns found in Thompson's truck, and Thompson. Thompson maintained he was not intoxicated but offered no additional evidence. Following trial, the jury found Thompson guilty as charged.

Thompson appeals. Additional facts will be set forth as relevant to the issues raised on appeal.

---

[1] Police later confirmed Thompson had two loaded and operable handguns in the front passenger area—one on the seat and one in a backpack behind the seat.

## II.    Sufficiency of the Evidence

Thompson challenges the sufficiency of the evidence to support his convictions. We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). As the court stated in *Crawford*,

> When evaluating the sufficiency of the evidence, we consider whether, taken in the light most favorable to the State, the finding of guilt is supported by substantial evidence in the record. There is substantial evidence if the evidence would convince a rational fact finder the defendant is guilty beyond a reasonable doubt. We draw all legitimate inferences in support of the verdict. However, evidence which merely raises suspicion, speculation, or conjecture is insufficient. The evidence must at least raise a fair inference of guilt as to each essential element of the crime.

*Id.* at 516–17 (cleaned up).

Because Thompson refused to submit to standardized field sobriety testing or chemical testing, the jury was instructed the State had to prove the following elements of operating while intoxicated:

> 1. On or about September 23, 2022, the defendant operated a motor vehicle.
> 2. At that time, the defendant was under the influence of alcohol, drugs, or a combination of alcohol and drugs.

*See* Iowa Code § 321J.2(1)(a) (2022); *State v. Myers,* 924 N.W.2d 823, 827–28 (Iowa 2019) (noting that the operating-while-intoxicated alternative found in section 321J.2(1)(a) "primarily utilizes evidence of a person's conduct and demeanor," rather than test results, and "requires no specific threshold level of a prohibited substance").

And the jury was instructed the State had to prove the following elements of possession or carrying of dangerous weapons while under the influence:

> 1. On or about September 23, 2022, the defendant carried a dangerous weapon on or about his person or within his immediate access or reach while in a vehicle.
> 2. At that time, the defendant was under the influence of alcohol, drugs, or a combination of both.

*See* Iowa Code § 724.4C.

Thompson does not contest he was operating a motor vehicle and carrying a dangerous weapon. Instead, he claims the State failed to prove the "under-the-influence" element of each offense. On that element, the jury was instructed:

> A person is "under the influence" when, by drinking liquor and/or beer, one or more of the following is true:
> 1. Their reason or mental ability has been affected.
> 2. Their judgment is impaired.
> 3. Their emotions are visibly excited.
> 4. They have, to any extent, lost control of bodily actions or motions.

The jury was further instructed: "The State does not need to prove how the defendant was driving. However, you may consider his manner of driving in deciding if he was under the influence of alcohol." The jury was also instructed Thompson "was asked to give a breath sample so it could be analyzed to determine the percent of alcohol in his blood" but Thompson had "refused." Although Thompson was "not required to give a sample of any bodily substance," the jury could consider his refusal in reaching its verdict. *See* Iowa Code § 321J.16.

And while not an instruction in this case, the jury could consider Thompson's truthfulness in his interactions with police. *See State v. Perry*, No. 23-1062, 2024 WL 2839215, at *3 (Iowa Ct. App. June 5, 2024) (finding sufficient evidence for a

defendant's operating-while-intoxicated conviction where, among other facts, he lied to officers about being the driver of a vehicle); *State v. Little*, No. 19-1062, 2021 WL 1400068, at *9 (Iowa Ct. App. Apr. 14, 2021) (noting a jury could properly infer guilt from a defendant's shifting statements to police).

Thompson's claim on appeal hinges on the fact that one responding officer could not detect any odor of alcohol emanating from Thompson and the other two responding officers could detect an odor of alcohol on Thompson's breath "only when they were very near to him." Thompson maintains he "required no assistance in walking or standing" and "complied" with all the officers' requests. He further notes "leaning on the guardrail and the police cruiser is a common occurrence at traffic stops done by stone cold sober suspects." And Thompson likens the officers' reports of his unzipped pants, threats to sue the police department, and excessive talking to "extraneous observations" unrelated to signs of impairment.

"Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury is free to reject certain evidence, and credit other evidence." *State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014) (cleaned up). In this case, the jury was able to hear testimony from the State's witnesses and Thompson and reach a conclusion about the testimony's veracity and weight. The jury viewed body camera footage, which allowed it to independently assess Thompson's condition. Despite Thompson's claim that he was not visibly excited or acting erratically, "that conclusion was for the jury to make." *Perry*, 2024 WL 2839215, at *4. Upon our review, we are "highly deferential to the jury's verdict," and "[w]e will affirm the jury's verdict when the verdict is supported by substantial

evidence." *State v. Lacey*, 968 N.W.2d 792, 800 (Iowa 2021). We find the evidence sufficient to support Thompson's convictions on both counts.

## III.    Weight of the Evidence

Thompson challenges the district court's denial of his motion for a new trial. When a defendant moves for a new trial based on the weight of the evidence, the "test is more searching than the sufficiency-of-the-evidence test, involves questions of credibility, and requires the district court to determine whether more credible evidence supports one side or the other." *State v. Shorter*, 893 N.W.2d 65, 70 (Iowa 2017). We review the court's ruling for abuse of discretion. *Id.* at 71.

Thompson asserted "the State failed to provide sufficient evidence or sufficient proof [of] the second element on both Counts" due to "inconsistent statements between officers' testimony" and the officers' "lack of credibility."[2] *See* Iowa R. Crim. P. 2.24(2)(b)(7). The district court heard arguments from the parties on the motion prior to sentencing, and the court overruled the motion. At the outset of its ruling, the court acknowledged defense counsel "did a wonderful job in pointing out that aspect of the one officer's report where he said he did not smell alcohol." But the court continued:

> That being said, the great thing about having video of police encounters with Defendants is that there is a video. There's something you can rely on. And it records what is said and provides the jury something that they can observe.

---

[2] Thompson's motion further claimed he did not receive a fair and impartial trial due to the district court's "denial of [his] motion to continue the trial to allow a full review and analysis by an independent expert of the video discovery presented at trial," which "prejudiced [him] as it severely limited the defense's ability to challenge the validity and authenticity of the video discovery." *See* Iowa R. Crim. P. 2.24(2)(b)(8). The district court denied Thompson's claim under rule 2.24(2)(b)(8). Thompson does not challenge that portion of the court's ruling on appeal.

> I—I'm going to find the verdict was not contrary to the weight of the evidence in this case. And, in fact, I thought the officers were credible. I thought they were honest about what they actually observed and what they did not. And so when pressed about the smell of alcohol, the one officer said, No, I don't recall smelling alcohol. I thought that was—I think they were shooting straight here. That they were actually being quite honest about what they saw and what they heard and not making things up or trying to speculate.
>
> In addition, as I said, the video shows the Defendant, and I think that corroborated the officers' testimony. We saw the Defendant carry on in a way that was very consistent with somebody who was under the influence of alcohol or drugs at the time.
>
> So I am finding that the verdict is not contrary to the weight of the evidence. And, in fact, I'll go as far to say that I might agree with the State's assertion that there was overwhelming evidence that your client was under the influence while he was driving that vehicle, as well as having handguns within arm's reach.

Thompson challenges the court's ruling on appeal, arguing "the weight of the evidence strongly tips in favor of Thompson's position that the offense charges were not proven and the credible evidence—even from the responding officers' respective testimonies—do not weigh in favor of the State and the guilty verdicts." We disagree. The district court recited its reasons for concluding the verdict was not contrary to the evidence, including its credibility findings and its reliance on the video evidence. And although the court did not recite Thompson's refusal to submit to chemical testing, it could have properly relied on that fact when determining whether he was under the influence. *See* Iowa Code § 321J.16; *State v. Walton*, No. 22-1428, 2024 WL 3518151, at *3 (Iowa Ct. App. July 24, 2024). Under these facts and circumstances, the district court did not abuse its discretion in determining the greater weight of the credible evidence supports the jury's verdict. We affirm the denial of Thompson's motion for a new trial.

## IV.    *Motion to Continue*

Thompson's trial was scheduled to begin on Monday, September 11, 2023. On Friday, September 8, Thompson moved for continuance, claiming "[a]dditional time is necessary to adequately prepare for trial."  Specifically, Thompson alleged "after reviewing some of the video discovery, [he had] additional questions and concerns that he would like to address before deciding on moving forward with trial."  This claim implicates State's exhibits 2 and 4—Officer Fink's bodycam videos, which depicted law enforcement's interactions with Thompson at the scene of his arrest and at the police station.  Thompson believed the videos "appear[ed] to be on a loop and certain statements . . . were repeated," and he wanted "a tech expert to review those things."

The State resisted.  The district court addressed Thompson's motion at the outset of trial and overruled it as follows:

> As far as the video validity, [the State] would be required to show foundation prior to introducing the videos.  And, [defense counsel], you're more than able to cross-examine the witnesses about the foundational issues or authenticity or any validity issues that you might have with the videos.  I think that would be enough of a safe guard at this point.
>     . . . . With that, the motion to continue is denied.  This case is fairly old for a misdemeanor.  And I do—we do have a jury panel here, as well as witnesses have already been subpoenaed and are scheduled to be here.  We're just going to go forward with it today.  I don't find that there's good cause for a continuance at this time.[3]

---

[3] Updated Iowa Rules of Criminal Procedure became effective on July 1, 2023, which substantively amended rule 2.9 and eliminated the rule "discourag[ing]" motions for continuance and providing such motion "shall not be granted except upon a showing of good and compelling cause."  Iowa R. Crim. P. 2.9(2) (effective to June 30, 2023).  On appeal, however, Thompson does not challenge the court's "good cause" statement, and neither the parties nor the court referenced the amended rule when addressing Thompson's motion.  We review to determine whether the court abused its discretion by denying the motion.  *State v. Miller*, 480 N.W.2d 894, 895 (Iowa 1992).

On appeal, Thompson again maintains "the bodycam footages . . . presented to the jury were altered in materially misleading and significant ways." He does not, however, allege specific times the videos were altered or provide any evidence to support his claim.[4] "Apart from the desire to [investigate the bodycam videos], [Thompson's] reasons advanced below for needing a continuance were 'vague and uncertain.'" *State v. Clark*, 814 N.W.2d 551, 562 (Iowa 2012); *see also State v. Sanders*, No. 22-1435, 2024 WL 5153319, at *6 (Iowa Ct. App. Dec. 18, 2024). Thompson "said only that he wanted to conduct more 'investigation,'" but he "has made no showing that any information he would have obtained from further investigation would be material to his defense." *See Clark*, 814 N.W.2d at 562. And as the district court noted, the State "would be required to show foundation prior to introducing the videos" and defense counsel would have the opportunity "to cross-examine the witnesses about the foundational issues or authenticity or any validity issues that you might have with the videos."

We will not interfere with the district court's ruling on a motion for continuance "unless it clearly appears" the court "has abused its discretion, and an injustice has resulted therefrom." *State v. Hanson*, No. 23-0286, 2024 WL 3050515, at *2 (Iowa Ct. App. June 19, 2024). Under these circumstances, we cannot find the district court abused its discretion in denying the motion for continuance. We affirm on this issue.

---

[4] As an aside, our review of the videos raises no uncertainty as to their reliability.

*V.*      ***Sentencing***

Thompson challenges the sentence imposed by the district court.  He claims the court abused its discretion by sentencing him to serve 180 days in jail—which was "three times the period that the State itself had recommended"—after the court placed too much weight on Thompson's perceived lack of remorse.

We review sentences for correction of errors at law.  *State v. Damme*, 944 N.W.2d 98, 103 (Iowa 2020).  "[T]he decision of the district court to impose a particular sentence within the statutory limits is cloaked with a strong presumption in its favor," and we will only reverse for an abuse of discretion.  *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002).  An abuse of discretion occurs when "the decision was exercised on grounds or for reasons that were clearly untenable or unreasonable."  *Id.*

The district court provided the following explanation for Thompson's sentence:

> As far as jail time is concerned, I am going to impose jail time in this case.  I do not think suspending a large amount of jail time, as suggested by the defense, would be adequate in this situation.  Here, we have a Defendant who has a lack of remorse for endangering the community.  He's certainly not taken any responsibility for his actions, whatsoever.  To me, that indicates this is likely going to be a problem in the future, as it has been in the past.  And with the prior OWI convictions, the prior public intoxes, and other issues with alcohol that the Defendant has had, I think a substantial jail sentence is needed to get the Defendant's attention, that this behavior is completely and totally unacceptable.  Driving on I-380, a heavily commuted route here in Cedar Rapids, with other vehicles—many other vehicles on the roadway as shown in the video, puts everybody in danger.
> The fact that Mr. Thompson was carrying handguns as well and at least one was within arm's reach and accessible to him on the passenger seat, and in the backpack area, one was accessible in the rear seat for him, these are—these are privileges to be able to

have—to bear arms, and if you're intoxicated, there's no place to have a gun anywhere near you where you can make poor choices.

So it's because there's a history of alcohol problems, a lack of addressing those alcohol problems, and that you're endangering the community with disregard that I'm going to impose 365 days in jail. I am going to suspend all but 180 days. I'm going to order that that suspended time you'll serve on supervised probation, where the terms of the probation will include no alcohol or drugs, and the Defendant may not possess, obtain, or have in his residence a firearm or ammunition.

. . . .

The reasons for this sentence, I think I've pretty much hit on the ones that really stand out to me. But it also includes the Defendant's age. You're much too old to have this many alcohol offenses on your record, and you're much too old to not understand that that is a problem for you, and it's a problem for the community. The prior criminal record plays a large role in this, employment, nature of this offense, potential harm that it put the community in the way of, the fact that there was—there were weapons, and at least one weapon within arm's reach, and your need for rehabilitation. And, Mr. Thompson, you do need rehabilitation. This is an issue. And you can deny it, if you like, but it's going to keep rearing its head in the criminal justice system unless you address this front on.

I also find that this sentence provides the maximum benefit to the Defendant and to the community, and that this provides an opportunity for rehabilitation as well as also protects the community from further offenses by the Defendant.

"We require sentencing courts to consider the nature of the offense and the attending circumstances when exercising discretion." *State v. Castillo*, No. 23-2044, 2024 WL 4039561, at *2 (Iowa Ct. App. Sept. 4, 2024) (cleaned up); *see also Damme*, 944 N.W.2d at 106; *Formaro*, 638 N.W.2d at 725. The district court's consideration of Thompson's disregard for other drivers on the busy highway, the presence of weapons within reach in his vehicle, his history of alcohol-related offenses, and his subsequent lack of accountability for his actions, are part of such circumstances. *See, e.g.*, *State v. Jacobs*, No. 18-0160, 2019 WL 156638, at *3 (Iowa Ct. App. Jan. 9, 2019) ("[T]he court can consider a defendant's acceptance of responsibility—or lack thereof—in deciding what sentence to impose.").

Thompson's demeanor reveals his character and can be considered when selecting an appropriate sentence. *See State v. Palmer*, No. 03-1193, 2004 WL 240012, at *2 (Iowa Ct. App. Feb. 11, 2004). And Thompson's lack of remorse reflects his attitude about the incident, "which was relevant to his need for rehabilitation." *State v. Wakely*, No. 23-1470, 2025 WL 52758, at *2 (Iowa Ct. App. Jan. 9, 2025); *see also State v. Staton*, 13 N.W.3d 795, 799 (Iowa 2024) ("[A] defendant's lack of remorse is highly pertinent to evaluating his need for rehabilitation and his likelihood of reoffending." (citation omitted)). Here, we cannot find the court's consideration of the relevant sentencing factors constitutes an abuse of discretion.

We affirm Thompson's convictions and sentence.

**AFFIRMED.**