# IN THE COURT OF APPEALS OF IOWA

No. 24-0661
Filed November 13, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**RICKIE BLAINE WITHERS SR.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Wright County, Gregg Rosenbladt (motion to continue), Rustin Davenport (motion to continue, trial, and sentencing), Judges.

        Rickie Withers Sr. appeals his convictions and sentences for four counts of second-degree sexual abuse and three counts of third-degree sexual abuse. **AFFIRMED.**

        Leah Patton (argued) of Patton Legal Services, LLC, Ames, for appellant.

        Brenna Bird, Attorney General, and Katherine Wenman (argued), Assistant Attorney General, for appellee.

        Heard at oral argument by Tabor, C.J., and Schumacher, Chicchelly, Langholz, and Sandy, JJ.

**SCHUMACHER, Judge.**

The State charged Rickie Withers Sr. with four counts of second-degree sexual abuse and three counts of third-degree sexual abuse for various acts perpetrated over several years against two girls, R.W. and A.W.[1] *See* Iowa Code §§ 709.3, 709.4 (2023). The district court appointed the children a guardian ad litem (GAL) under Iowa Code section 915.37. Following trial, the jury found Withers guilty as charged. The court sentenced Withers to two consecutive and five concurrent terms of imprisonment.

On appeal, Withers claims the court's decision to allow the GAL to sit next to R.W. during her testimony over his objection denied Withers his constitutional right to a fair trial. He argues "the State should be required to show a compelling necessity for a special accommodation." Withers also claims the court abused its discretion by denying his motion to continue when the prosecutor "provided late notice of additional witnesses and evidence." Finally, Withers challenges his sentences, claiming the court abused its discretion by imposing consecutive sentences without giving appropriate consideration to "his age and medical conditions." Upon our review, we affirm Withers' convictions and sentences.

## I. Guardian ad Litem

At the time of trial, R.W. was seventeen years old and a junior in high school. She testified about the sexual abuse committed by Withers when she was between thirteen and fifteen years old. At the beginning of her testimony, R.W. agreed the

---

[1] R.W. and A.W. lived with their biological grandmother/adoptive mother, Debra. Debra and Withers had a longstanding, off-and-on relationship. Withers had lived with Debra and the children since approximately 2012.

abuse was "difficult" to talk about. R.W. then began recounting specific instances when Withers "made [her] have sex with [him]" in different rooms of the family's home. The court took a recess, and the following colloquy took place:[2]

> COURT: We're outside the presence of the jury. Defense counsel would like to make a record.
>
> DEFENSE COUNSEL: Yes, Your Honor. My client told me he observed one of the witnesses with the bikers against child abuse who are sitting closest to the jury panel while [R.W.] was on—on the witness stand was making gestures such as touching her heart and others. We believe that is communication with the witness, not to tell her what to say but to say—but to tell. She's encouraging the witness, and I don't believe that's a proper thing for anybody to be doing who is not the attorney questioning.
>
> COURT: All right. State's response?
>
> STATE: I didn't get to observe the allegation being made. I won't dispute counsel's word to that extent. I think we'll need to advise the audience members to conduct themselves accordingly. If the court needs to give them that instruction, that is fine with the State.
>
> COURT: All right. I don't find the description you have of tapping his heart as a communication of what to say. I mean, I think we're all trying to hope that this child can get through the—her testimony in the most efficient manner. So I don't find this sort of prejudice or interference with the witness's testimony that would require action in front of the jury.
>
> I think I will instruct the participants not to make any gestures or try to have any communication with the witness, so I will give that instruction to the participants or the audience here. [Defense counsel], anything else you want me to tell them?
>
> DEFENSE COUNSEL: No, Your Honor. That's what I wanted you to do. So thank you.
>
> COURT: All right. I'll do that. Thank you.
>
> GAL: [R.W.] is asking if I can sit with her.
>
> COURT: Any objection?
>
> DEFENSE COUNSEL: I am going to object. I obviously know that the GAL is not going to coach the witness or tell her to answer or anything like that. That's not my problem. My problem is how it would be interpreted by the jury as giving support or lending extra weight to whatever [R.W.] may say.

---

[2] Withers' claim on appeal focuses on the GAL's involvement in his trial. That said, we observe the following dialogue between the parties and court may have been relevant to the court's decision relating to the GAL.

COURT: I've already explained [the GAL's] role in this matter. Do you think if I grant the request there's any other further instructions I would give to the jury?

GAL: I think maybe remind the jury that I am a neutral position and that I'm there simply to enable her to feel more comfortable testifying; that if we wanted to say that there's no additional weight, given if you would like to go that far.

DEFENSE COUNSEL: Your Honor, if I may. I think I would strike the word neutral. That would just confuse the jury. And the other thing is you shouldn't imply, you know—either tend to believe the witness or tend to disbelieve the witness more if the GAL is sitting next to her. We use the word weight, but that might not be—ring—resonate with the jury.

COURT: So I have "the GAL is present in order to support the witness, and her presence should not give you any indication whether you are more likely to believe the witness or disbelieve the witness."

DEFENSE COUNSEL: That works.

COURT: State want to add anything?

STATE: No, Your Honor.

COURT: I'm going to—I note the objection. I think—I think one of the purposes of the GAL is to make this process less harmful for the children, and if the GAL's recommendation makes it less harmful, I'm going to grant that. . . .

The jury returned to the courtroom, and the court stated:

Ladies and gentleman, I have earlier introduced to you Ms. Alesha Sigmeth Roberts, the guardian ad litem for the minor children in this case. You can see now that she is—As part of her role here, she is sitting next to the witness. As I told you before, her presence is not to be considered by you during your deliberations. Her presence next to the witness is not to be considered by you when you consider whether to believe or disbelieve this witness. Counsel, you may resume.

On appeal, Withers claims the district court violated his due process right to a fair trial under the federal and Iowa constitutions by allowing the GAL to sit next to R.W. as a "comfort accommodation" during R.W.'s testimony. According to Withers, "A defendant in a criminal case has a due process [right] to a fair trial, specifically presenting a defense to the charge(s) by cross-examining witnesses under the Fifth, Sixth, and Fourteenth Amendments to the United States

Constitution and Article 1, sections 9 and 10 of the Iowa Constitution." (Internal footnotes omitted.)

Preliminarily, we address a preservation-of-error issue. The State acknowledges Withers preserved error to the extent of his objection that the jury could interpret the GAL's presence "as giving support or lending extra weight to whatever [R.W.] may say." But the State claims Withers failed to preserve error on a constitutional claim.

"Issues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal." *State v. Derby*, 800 N.W.2d 52, 60 (Iowa 2011) (citation omitted). To preserve error, a party must alert the court to the specific constitutional basis for the claim. *See State v. Ary*, 877 N.W.2d 686, 699 (Iowa 2016); *State v. Mitchell*, 757 N.W.2d 431, 435 (Iowa 2008).

Withers appears to acknowledge he did not raise a constitutional claim before the district court, but he argues such claim was "obvious and understood" by the court and counsel. *See State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005); *Ary*, 877 N.W.2d at 699 (finding a constitutional claim preserved because there was no alternative basis "on which the court might have been obligated to grant the motion, the constitutional basis for the claim was obviously apparent"); *In re Det. of Hodges*, 689 N.W.2d 467, 470 (Iowa 2004) (determining a due process claim was preserved by a motion for directed verdict where defense counsel informed the district court that his argument was based on caselaw addressing due process challenges to civil commitments, finding "[i]t is clear in this case that 'the trial court, counsel, and both parties had no doubt [that] the grounds for the motion'

were that civil commitment of Hodges would violate due process" (citation omitted)).

We disagree. It is apparent from Withers' objection and the following discussion that the focus of the claim was on the statutory purpose of the GAL. Indeed, in its ruling, the court stated that "one of the purposes of the GAL is to make this process less harmful for the children, and if the GAL's recommendation makes it less harmful, I'm going to grant that." *See* Iowa Code § 915.37 ("The guardian ad litem shall receive notice of and may attend all depositions, hearings, and trial proceedings *to support the prosecuting witness and advocate for the protection of the prosecuting witness* but shall not be allowed to separately introduce evidence or to directly examine or cross-examine witnesses." (emphasis added)).

The court did not address any constitutional implications of the GAL's involvement, and Withers did not raise any. Because Withers' constitutional claim was neither raised before nor decided by the district court, it is not preserved. *See Derby*, 800 N.W.2d at 60; *State v. Vandekieft*, No. 17-0876, 2018 WL 2727720, at *6 (Iowa Ct. App. June 6, 2018) (finding a constitutional claim not preserved where the defendant objected to the challenged statements but "did not mention due process").

We turn to the version of Withers' claim that is properly before us. He challenges the court's decision to allow the GAL to sit beside R.W. during her testimony under Iowa Code section 915.37. That section provides:

A prosecuting witness who is a child[3] . . . is entitled to have the witness's interests represented by a guardian ad litem at all stages of the proceedings arising from such violation. The guardian ad litem shall be a practicing attorney and shall be designated by the court after due consideration is given to the desires and needs of the prosecuting witness and the compatibility of the prosecuting witness and the prosecuting witness's interests with the prospective guardian ad litem. . . . The guardian ad litem shall receive notice of and may attend all depositions, hearings, and trial proceedings to support the prosecuting witness and advocate for the protection of the prosecuting witness but shall not be allowed to separately introduce evidence or to directly examine or cross-examine witnesses. . . .

Iowa Code § 915.37(1)(a).

The supreme court analyzed the GAL's role in a criminal case under section 915.37 in *State v. Skahill*, 966 N.W.2d 1, 17–20 (Iowa 2021). In that case, a child witness in a sexual-abuse case testified by videoconference from a separate room in the courthouse. *Skahill*, 966 N.W.2d at 6; *see* Iowa Code § 915.38(1)(a) (allowing this procedure to protect a minor from trauma). On appeal, in addition to challenging the admission of Child Protection Center

---

[3] Withers maintains "R.W.'s age (seventeen at the time of trial) and lack of mental or intellectual disability counseled against having the guardian ad litem sit next to her during her testimony." But section 915.37 provides that a child under eighteen years is entitled to representation by a GAL. *See* Iowa Code § 915.37(b)(1) ("For purposes of this subsection" a "'[c]hild' means a person under eighteen years of age.").

Withers further claims "[t]here did not appear to be an issue with [R.W.'s] ability to testify—whether credibly or at all." But the district court was in the best position to evaluate "the atmosphere of the trial itself, the manner in which the words were spoken," and R.W.'s need for the GAL's support, rather than "an appellate court on a cold record." *State v. Lloyd*, No. 22-0861, 2024 WL 1756382, at *5 (Iowa Ct. App. Apr. 24, 2024) (citation omitted); *see also Meier v. Grunder*, No. 10-1072, 2011 WL 768740, at *6 (Iowa Ct. App. Mar. 11, 2011) ("A witness's facial expressions, vocal intonation, eye movement, gestures, posture, body language, and courtroom conduct, both on and off the stand, are not reflected in the transcript. Hidden attitudes, feelings, and opinions may be detected from this 'nonverbal leakage.'" (quoting Thomas Sannito & Peter J. McGovern, Courtroom Psychology for Trial Lawyers 1 (1985))).

interview videos, the defendant claimed the GAL's involvement in his case exceeded what section 915.37 permits. *Skahill*, 966 N.W.2d at 17–18. Specifically, the defendant challenged the GAL's actions in opposing defense motions, opposing defense requests for testimony, supporting the prosecutor's objections, and cross-examining a witness outside the jury's presence. *See id.* at 7.

Although the court reversed the defendant's conviction on other grounds, it took the "opportunity to provide guidance on the subject of the GAL's involvement" under section 915.37. *Id.* at 17. As relevant here, the court observed, "GALs may attend depositions, hearings, and trial proceedings in the service of two goals: (1) support the child and (2) advocate for the protection of the child. Additionally, the statute expressly disallows two specific activities: introducing evidence and examining witnesses." *Id.* at 18 (cleaned up).

The *Skahill* court expressly approved of the GAL "zealously and appropriately look[ing] out for [the child witness]'s well-being" but rejected the State's suggestion that section 915.37 allowed the "GAL to do anything to increase the chances of conviction," such as "echo[ing] the prosecutor's objections to the admission of certain defense evidence." *Id.* As the court explained:

> The State overlooks the language in the statute defining the GAL's role as that of supporting the child and advocating for the protection of the child. Thus, we believe the GAL's activities should be devoted to supporting and protecting the child *within* the criminal case. It is not the GAL's role to attempt to bring about *a result* in the criminal case just because the GAL believes that result will benefit the child. The prosecution already advocates for a conviction. There is no need for the GAL to become a sidekick. Instead, the GAL should voice concerns for the child that judges and parties are prone to overlook during the heat of a criminal proceeding.
>     . . . .

Here, the GAL argued against the admission of certain evidence, such as photographs of the Skahills' chair, and opinion testimony regarding [the child witness]'s truthfulness. These arguments were inappropriate. Generally, a GAL should not be involved in evidentiary disputes that do not involve the child's own testimony. Advocating for a child's protection does not include arguing against the admission of evidence solely because it advances the defendant's case or cuts against the child's testimony. Likewise, we do not think it is the GAL's job to argue for the admission of forensic interviews as a way of bolstering the child's credibility.

On the other side of the ledger, we think Skahill goes too far in asserting that GALs should never make legal arguments. The text of Iowa Code section 915.37 does not specifically disallow legal argument, and understandably so. It would be strange to require GALs to be attorneys and then disallow one of the defining characteristics of an attorney: the ability to make legal arguments. GALs may make legal arguments as long as they fall under the umbrella of advocating for the child's protection.

This case provides some examples of helpful involvement by a GAL. After Skahill's first trial ended in a mistrial, both his attorneys moved to withdraw. This motion went unopposed by the State. However, the GAL recognized that a withdrawal would delay the second trial and further draw out the emotional harm K.W. was suffering as a result. The GAL opposed the motion and the court denied one of the withdrawal requests, citing the GAL's advocacy as "the most powerful reason" for its decision.

*Id.* at 18–19 (internal citations omitted).

Applying this reasoning to the case before us, we believe the GAL's involvement in Withers' case fits into the type of conduct that was approved by the court in *Skahill*. *See also, e.g.*, Carol A. Crocca, Annotation, *Propriety & Prejudicial Effect of Third Party Accompanying or Rendering Support to Witness During Testimony*, 82 A.L.R.4th 1038 (1990) (summarizing cases from other jurisdictions finding no reversible error in allowing the presence of a GAL during the child's testimony in prosecutions involving sexual abuse). That is, here, by "voic[ing] concern" to the court that R.W. wanted the GAL to "sit with her," the GAL was "devoted to supporting and protecting [R.W.] *within* the criminal case." *Skahill*, 966

N.W.2d at 18. Indeed, Withers does not argue, nor does the record show, that the GAL "attempt[ed] to bring about *a result*" in Withers' case by advocating for the State's position at trial. *Id*. at 18–19. Accordingly, under these facts and circumstances, we affirm the court's order allowing the GAL to sit beside R.W. during the child's testimony under Iowa Code section 915.37.[4]

In reaching this conclusion, we have also considered and rejected Withers' claim that "the State should be required to show a compelling necessity" before granting the "comfort accommodation" in this case. Withers urges us to consider the requirements set by other jurisdictions that have addressed the issue and require the district court to "conduct a preliminary hearing on whether to allow a guardian ad litem to sit next to the complaining witness while testifying," during which "[t]he State must prove that 'unless the child witness in a criminal jury trial is allowed to testify with comfort accommodations, (1) the child will not be able to testify credibly or at all, or (2) the child will suffer traumatic harm.'" *See* Angela Nascondiglio, *The Cost of Comfort: Protecting a Criminal Defendant's Constitutional Rights When Child Witnesses Request Comfort Accommodations*, 61 N.Y.L. Sch. Rev. 395, 407 (2017).

---

[4] The State presents a strong argument that we should review the court's decision for an abuse of discretion because it involves a question of "courtroom decorum," which courts are allowed to control. *See State v. Hutchinson*, 341 N.W.2d 33, 42 (Iowa 1983) ("[T]rial courts are given considerable latitude and freedom of action to control and ensure orderly process at trial."); *State v. Carey*, No. 12-0230, 2014 WL 3928873, at *9 (Iowa Ct. App. Aug. 13, 2014) ("The management of the courtroom is subject to the trial court's discretion, and great deference must be accorded to its decision."). But we also observe that "[q]uestions of statutory interpretation are reviewed for correction of errors at law." *State v. Montgomery*, 966 N.W.2d 641, 649 (Iowa 2021) (citation omitted). For purposes of our decision on appeal, we reiterate that we find no error in the court's order.

To support his contention, Withers points to Iowa Code section 915.38, which allows the court to "order[] that the testimony of the minor be taken in a room other than the courtroom and be televised by closed-circuit equipment for viewing in the courtroom" to protect the minor "from trauma caused by testifying in the physical presence of the defendant where it would impair the minor's ability to communicate" "*upon a specific finding by the court that such measures are necessary to protect the minor from trauma*."  (Emphasis added.)

Withers maintains this case "presents an issue of first impression" because "Iowa does not have any statutory provision that addresses comfort accommodations for child complainant witnesses during their testimony."  That said, as noted above, section 915.37 provides for the type of involvement by the GAL under the facts and circumstances of this case.  *See Skahill*, 966 N.W.2d at 18–19.  "Indeed, the interpretation of section [915.37] advanced by [Withers] . . . would, in effect, add words to the statute, contrary to our rules of statutory interpretation."  *State v. Alvarado*, 875 N.W.2d 713, 720 (Iowa 2016).  We decline to interpret the statute to require a finding of compelling necessity.  We affirm on this issue.

## II.    Motion to Continue

The State filed the present charges against Withers in March 2023.  Withers pled not guilty and waived his right to a speedy trial.  Trial was scheduled for July 11, 2023.  After six continuances—some at Withers' request and the others at the request of both parties—trial was eventually scheduled for February 13, 2024.  A pretrial conference took place on January 24, 2024, after which the court entered

an order stating in part, "This matter is ready for trial and shall proceed as scheduled. Currently this case is in the leadoff position."

On January 25, the State filed its witness list. That same day, the State also filed a notice of additional witness and minutes of testimony, naming Debra Withers. According to the State, Debra would "lay foundation who she is, who these children are, what is the nature of the relationship between these children and [Withers]" and address "certain gaps that the children may not be able to fill," like "whose room is that" relating to pictures that would be introduced, or what was happening in the house during certain periods of time that gave Withers opportunities to abuse the children.

On February 5, a week before trial began, the State filed a second notice of additional witness and minutes of testimony, naming Special Agent Erik Frampton of the Department of Criminal Investigation (DCI)–Cyber Crimes Bureau. The notice stated that Agent Frampton would testify about his examination of Withers' computer, which "identified web browser history content indicating visits to pornography websites between 08/2020 and 11/2022," which was consistent with statements by R.W. and A.W. "that the defendant had shown them pornography on the computer."

Defense counsel filed a motion to continue, stating that "in the past two week[s], the State has filed additional minutes of testimony, one on January 25, 2024 and on February 5, 2024 listing two (2) new witnesses." Defense counsel also pointed to Agent Frampton's report "that was the subject of the additional minutes of testimony," which "appears to show internet activity by the Defendant including web sites visited, date and time of access, etc." Defense counsel

acknowledged R.W. and A.W. "have accused the Defendant of showing them pornography, [but] the statements only referred to pornography in a general manner and not with any level of specificity." According to defense counsel, "additional discovery is now needed to determine what this the [sic] new information actually shows, the level of confidence in the accuracy of the data, if the data could be an artifact, etc." Defense counsel acknowledged delivery of the report on February 5.

The State resisted the motion to continue, stating Debra "is not a material witness"; "[n]othing in her testimony rises to a level of surprise that would trigger a need for further investigation." Relating to Agent Frampton and his report, the State maintained:

> The DCI Agent will testify that he did find evidence of pornography searches in the computer. This is not a surprise to the defendant: Defendant was well aware from the minutes of testimony filed on March 23, 2023 (almost a year ago) that the victims in this case alleged that he would make them watch pornography with him, on his computer that was seized as part of the investigation.

The State further pointed out, "This trial involves minor victims of alleged sexual assault. The victims have struggled emotionally and mentally with trial delays and continuances in this matter. A continuance at this late stage when they are prepared and ready for trial is not in their best interest."

The district court denied the motion, noting Withers "is currently incarcerated," and stating in part, "The matter has been continued on several occasions, and is almost one year out from the date of the Trial Information. Upon

review of the file, the Court finds that there is not good cause to continue the Trial . . . ."[5]

At the outset of trial on February 13, Withers renewed his motion to continue. Defense counsel acknowledged he "didn't bother trying to get [Debra] deposed" because "[t]here just wasn't time." Defense counsel further stated he needed time to learn "what methods were used to discover the web sites" for Agent Frampton's report otherwise "we're going [to be] blindsided."

The State responded, "we have given the reports of what the officers did, the DCI agent in this particular case [Agent Frampton], how he checked the computer, how he analyzed it, what he found, what software he needed to use to get that, his experience and experience in that manner." The State also pointed out "this was evidence that was known to [the] defense" because Withers' computer was seized and Withers previously told police "that he does consume pornography and [uses] that same computer [to do so]." However, the State suggested, "if [defense counsel] wants to, these officers are available to be deposed as early as today to . . . ask more questions generated by those reports." The State further offered to make Debra "available [today] for any deposition that defendant would like to take."

---

[5] Updated Iowa Rules of Criminal Procedure became effective on July 1, 2023, which substantively amended rule 2.9 and eliminated the rule "discourag[ing]" motions for continuance and providing such motion "shall not be granted except upon a showing of good and compelling cause." Iowa R. Crim. P. 2.9(2) (effective to June 30, 2023). Withers does not challenge the court's "good cause" statement, and neither the parties nor the court referenced the amended rule when addressing Wither's motion. We review to determine whether the court abused its discretion by denying the motion. *State v. Miller*, 480 N.W.2d 894, 895 (Iowa 1992).

The court determined "this case needs to proceed to trial" and denied the motion to continue. That said, the court allowed defense counsel the opportunity to question Debra and Agent Frampton. Defense counsel equivocated, believing that questioning the witnesses would not be productive without a transcript to review afterward. The State then offered to attempt to get a court reporter, and the court directed the parties to wait until 3:00 that afternoon to "see if that could happen." The State managed to do so, and defense counsel deposed Debra with the reporter transcribing but declined to depose Agent Frampton.[6]

On appeal, Withers claims the court abused its discretion by denying his motion to continue because the State "listed late witnesses and evidence, which necessitated additional depositions and defense investigation." "We generally review a district court's denial of a motion for continuance for an abuse of discretion." *State v. Bumpus*, No. 18-1665, 2020 WL 1879671, at *2 (Iowa Ct. App. Apr. 15, 2020) (citation omitted). We will not reverse the court's decision to deny a continuance "unless it results in injustice." *Id.* (citation omitted).

Iowa Rule of Criminal Procedure 2.5(3) requires the prosecuting attorney, at the time of filing the trial information, to also file the minutes of testimony, including a notice stating the names of witnesses and a full and fair statement of the witnesses' expected testimony. Iowa Rule of Criminal Procedure 2.19(2) states:

> a. The prosecuting attorney shall not be permitted to introduce any witness whose minutes of testimony were not filed at least 10 days before the commencement of trial, except rebuttal witnesses.

---

[6] The State pointed out, "we did avail also the DCI agent. Defense chose to just depose Debra Withers."

      b. If the prosecuting attorney does not provide the requisite notice, the court may order the State to permit the discovery of such witness, grant a continuance, or enter such other order as it deems just under the circumstances. If the court finds that no less severe remedy is adequate to protect the defendant from undue prejudice, the court may order the exclusion of the testimony of any such witness.

As the State points out, Debra's minutes of testimony could not alone serve as a ground for a continuance because they were added more than ten days before trial. *See* Iowa R. Crim. P. 2.19(2). We further observe that Withers acknowledges an "argument could be made" that he knew Debra "could be called as a witness." Moreover, Withers deposed Debra before trial.

Turning to Agent Frampton's minutes of testimony, there is no dispute the State did not comply with the ten-day advance notice. The minutes were filed on February 5, and trial began on February 13. We note that the court denied Withers' initial motion to continue on February 6, leaving defense counsel a week to attempt to meet with Agent Frampton before trial.

In any event, at the outset of trial, the court ordered Agent Frampton to be made available for questioning or a deposition if a court reporter was available later that afternoon. Defense counsel declined to do either. Although not ideal, defense counsel was provided opportunities to question or depose Agent Frampton before trial. *See State v. Henderson*, No. 15-2227, 2017 WL 1735621, at *3–4 (Iowa Ct. App. May 3, 2017) (finding no abuse of discretion by the court's denial of the defendant's motion to continue trial where the State added a witness "one day before the trial" but the court "attempted to ameliorate the circumstance" by allowing defense counsel the morning to talk to the witness "either informally" or in a deposition).

And as to the surprise alleged by Withers relating to Agent Frampton's testimony and report, we note that other evidence in the record confirms that Withers showed R.W. and A.W. pornographic videos on his computer. Withers' computer was seized pursuant to the police investigation in this case; and a six-page summary listing a "portion" of "browser web history" from the computer that was redacted and reduced from Agent Frampton's report was admitted without objection from Withers, setting forth in detail the descriptive names for the incest pornography. *See State v. Clark*, 814 N.W.2d 551, 562 (Iowa 2012) (affirming the denial of the defendant's motion to continue, noting he "made no showing that any information he would have obtained from further investigation would be material to his defense"); *Henderson*, 2017 WL 1735621, at *4 (noting "there was significant other record evidence" to support a finding that the defendant sold drugs aside from the testimony of the untimely noticed witness).

Under these circumstances, we cannot conclude the district court abused its discretion by denying Withers' motion to continue or that Withers was unduly prejudiced.

## III.    Consecutive Sentences

Withers challenges the sentence imposed by the district court. He claims the court abused its discretion by deciding to impose consecutive sentences on counts I and II after not giving enough weight to his age and medical conditions.[7]

At the sentencing hearing, the district court explained its sentencing decision as follows:

---

[7] The court ordered concurrent sentences on counts III, IV, V, VI, and VII.

The law of Iowa requires a Court to impose a sentence that will best provide for the defendant's rehabilitation, protect the community, and deter others from committing similar crimes. In deciding the sentence, the Court considers the defendant's age, attitude, any criminal record, employment, financial and family circumstances, nature of the offense, recommendation of the parties.

As noted, all these convictions are for forcible felonies. The discretion left to me is whether those matters run consecutively or concurrently. Since each one of these is—was a violation of trust and a violation of the body, it would be justified to run all these sentences consecutively, recognizing that there's separate crimes separate violations and violations of trust. However, that's tempered by the defendant's age. While I think it's a difficult decision, I do agree with the State's recommendation that running Count 1 and Count 2 consecutively is appropriate under these circumstances, and given the nature of the offense, I think that's the necessary deterrence for—to the community, and I think that is the appropriate sentence.

As the court observed, because Withers was convicted of all forcible felonies, it was limited to whether it would impose consecutive or concurrent sentences. *See* Iowa Code § 907.3 (preventing the court from granting a suspended sentence for a forcible felony). And Withers' commission of separate offenses was a statutorily proper basis for consecutive sentences. *See id.* § 901.8 (authorizing consecutive sentences "[i]f a person is sentenced for two or more separate offenses").

So we turn to whether the court provided adequate reasons to explain its decision. *See State v. Hill*, 878 N.W.2d 269, 274 (Iowa 2016) (requiring court to give adequate reasons on the record to explain its exercise of discretion—including the decision to impose consecutive sentences). The court did not expressly discuss Withers' "medical conditions," but "the failure to acknowledge a particular sentencing circumstance does not necessarily mean it was not considered." *See State v. Boltz*, 542 N.W.2d 9, 11 (Iowa Ct. App. 1995). It is clear the mitigating

factors relied on by Withers were before the court. Defense counsel pointed out that Withers "does . . . have health issues," as did the presentence investigation report (PSI), which noted Withers had been "diagnosed with diabetes, heart problems, and high blood pressure" and had sustained several "serious injuries."[8]

Defense counsel also argued given Withers' age of seventy-one years old his mandatory minimum would be "a death sentence, basically." And although "the court need not specifically address each mitigating factor claimed by a defendant in providing its reasoning," *State v. Krysl*, No. 24-0634, 2025 WL 1704204, at *3 (Iowa Ct. App. June 18, 2025), the court noted its decision was "tempered by [Withers'] age." In sum, we find no abuse of discretion in the reasons for sentencing. *See State v. Headley*, 926 N.W.2d 545, 549 (Iowa 2019) (setting forth the standard of review "when the sentence challenged is within the statutory limits").

Having addressed the issues properly before us on appeal, we affirm Withers' convictions and sentences.

**AFFIRMED.**

Chicchelly and Langholz, JJ., concur; Sandy, J., dissents with Tabor, C.J., joining.

---

[8] The court confirmed it "ha[d] read" the PSI.

**SANDY, Judge** (dissenting).

"I don't know what I'm looking at.  *I need to have someone take a look at it after I looked at it.  So I'm going in there cold. . . .*  I have it.  All sixty-three pages.  I just can't understand it."  (Emphasis added.)  These were the words spoken by defense counsel after the State dropped a sixty-three-page digital forensics report along with the addition of the expert witness who authored it eight days before trial, in violation of Iowa Rule of Criminal Procedure 2.19(2)(a).  The case had been pending for almost one year.  Defense counsel requested a continuance of trial to properly prepare and digest the untimely disclosure.  The motion was denied.  Without wading into the propriety of a guardian ad litem sitting beside a seventeen-year-old complainant testifying in front of a jury, I would reverse and remand for a new trial because I believe the district court abused its discretion in not granting Withers' motion to continue trial to his prejudice.

Iowa Rule of Criminal Procedure 2.9 was amended effective July 1, 2023.  The prior version of rule stated, "The date assigned for trial shall be considered firm.  Motions for continuance are discouraged.  *A motion for continuance shall not be granted except upon a showing of good and compelling cause*."  Iowa R. Crim. P. 2.9(2) (emphasis added) (in effect prior to July 1, 2023).  The updated, less onerous version of the rule simply states, "Within 7 days after the entry of a plea of not guilty, the court shall, by written order, set the date and time for trial.  If the defendant waives speedy trial at arraignment, the court may hold a case management conference within 30 days, at which the date and time for trial and deadlines for filing motions and taking depositions will be set."  Iowa R. Crim. P. 2.9 (effective July 1, 2023).

It is not lost on me that the decision to grant or deny a motion for continuance of a criminal trial lies within the very broad discretion of the trial court. *State v. Kyle*, 271 N.W.2d 689, 691 (Iowa 1978). But it is not inoculated—the decision may be reversed on appeal if an injustice to the defendant results. *State v. Melk*, 543 N.W.2d 297, 300 (Iowa Ct. App. 1995); *see also State v. French*, 35 N.W.2d 1, 14 (Iowa 1948) (holding that requiring a defendant's attorney to proceed to trial where he or she has had insufficient time to prepare defeats justice and is an abuse of discretion). Here, I believe Withers met his burden to show that "substantial justice will be more nearly obtained" by the continuance. *State v. Ruesga*, 619 N.W.2d 377, 384 (Iowa 2000) (citation omitted).

Iowa Rule of Criminal Procedure 2.19(2)(b) expressly states that "[i]f the prosecuting attorney does not provide the requisite notice"—such as was done here—"the court may order the State to permit the discovery of such witness, *grant a continuance*, or enter such other order as it deems just under the circumstances." (Emphasis added.); *see also State v. McClain*, 106 N.W. 376, 377 (Iowa 1906) (holding that where a county attorney failed to comply with his promise not to call any witnesses save those of whom he gave defendant notice, and called a witness without notice, the remedy for the defendant was to apply for a continuance).

Indeed, the district court offered to have the State's expert deposed while trial in the matter commenced. The defense responded:

> [I]f I did that, I'd want to have a transcript because, frankly, I don't know what I'm looking at. I need to have someone take a look at it after I looked at it. So I'm going in there cold, and I don't believe that a short questioning without having the chance to review it later would do me a whole lot of good.

In other words, defense needed an expert not a deposition. Counsel for Withers did not understand the untimely disclosed sixty-three-page expert report and needed a continuance so as to enable him to "have someone take a look at it". A deposition (without a transcript)[9] would not have aided him in this endeavor. As counsel stated in his written motion to continue, he needed to determine what the sixty-three-page expert report "actually shows, the level of confidence in the accuracy of the data . . . ." In my view, "substantial justice would be more nearly obtained" in having the ability to do so thus rendering the denial of the motion an abuse of discretion. *Ruesga*, 619 N.W.2d at 377.

I also believe that the refusal to continue trial was prejudicial.[10] First, it is important to note that the State's argument against the continuance was that Withers knew or should have known this was coming and of no surprise because his "computer had been collected" and "the children had indicated or told the [Child Protection Center] interview that [Withers] would show them pornography on this particular computer that was seized." The fact Withers knew his computer had been collected is not relevant to his need to have "someone take a look at" the expert report to determine its "level of confidence in the accuracy of data." You cannot have an expert review a device you are not in possession of nor analyze and respond to a report you do not have. Second, the notion that Withers knew or

---

[9] The district court ruled that, given the time constraints, it would not force a court reporter to prepare a transcript in the matter.

[10] I question whether counsel had preserved error in the admittance of the expert report and testimony. No objection other than foundation was made during the direct examination of Agent Frampton. The focus of the reported in limine hearing centered on the continuance of trial and not so much the admittance of the evidence.

should have known that this was coming is without merit. At no time did the State produce any evidence that it had told Withers prior to its untimely disclosure that the report would be forthcoming. They provided no notice. And *why* the State took almost one year to disclose this information is completely missing from the record.

The refusal to continue the trial was prejudicial to Withers because he would have been put in a better position to not only understand what the digital evidence did or did not demonstrate but also to challenge its veracity. And its veracity was damning to Withers. In the words of the State, "It corroborates the victims' testimony. . . . [S]ome of this pornography that . . . are part of the evidence in this case . . . [involve] incest—stepfather or stepdad having sex with teenage daughter." The State explained that "the evidence is strong because, first of all, he showed the girls pornography, so that just comes in because that was an act that he did to be able to get access to these children. But it also . . . corroborates their testimony, so that's important." In this case the defense's theory was that the children made up their abuse because of their disdain for their stepfather. Thus, their credibility was key. The digital forensics provided an objective tool meant not only to corroborate their testimony but also show that Withers was attracted to the kind of conduct alleged. A continuance would have provided the defense an opportunity to combat such evidence.

A critique of my dissent may be that the defense's benefit from the continuance is merely speculative and, thus, the denial of the continuance is not prejudicial. Perhaps the defense would not have found such an expert. It is possible that nothing problematic with the digital forensics would have been discovered. And even if it had, perhaps the jury would not have found it convincing.

My unease with adopting that line of reasoning in my prejudice analysis is that such speculation will always occur in late-disclosure circumstances such as these. The requested delay by Withers was through no fault of his own. The State cannot use its own untimely disclosure as the means for undermining Withers' ability to show prejudice. It created the circumstances by which speculation is now required. I am reticent to reward the State to Withers' detriment.

And I am not alone in my unease. In *State v. Hanson*, a panel of our court unanimously opined reasoning "that [the defendant]'s trial would turn out the same regardless of whether or not he had more time to prepare" was "presumptuous." No. 23-0286, 2024 WL 3050515, at *3 (Iowa Ct. App. June 19, 2024) ("Who knows what evidence the subpoenas of the phone records would have turned up if [the defendant] had the opportunity to serve them. We also decline to speculate how a prepared counsel may have approached this case or the arguments to the jury. And the State turns a blind eye to what actually happened here. The denial of the motion to continue put [the defendant] squarely between a rock and a hard place. There was no tenable way for him to proceed with counsel who was not fully prepared or on his own on the spur of the moment. Contrary to the State's assertion, [the defendant] has established injustice resulted.").

Finally, I do think the substance of the disclosure is relevant to a prejudice analysis. *See, e.g.*, *In re Orcutt*, 173 N.W.2d 66, 71 (Iowa 1969) ("Whether in any case enough time has been afforded" and continuance appropriate "depends upon the circumstances of the case including the complexity of the factual issues and the legal principles involved.") I find it notable that the subject of the untimely disclosure was not a mere fact witness who might provide filler. It was a witness

with specialized expertise and training in a complex subject matter not otherwise readily understood by a lay juror. I worry that treating an untimely expert witness disclosure like any other witness disclosure perpetuates my concern about how we treat forensic evidence in the courtroom. *See, e.g., State v. Miller*, No. 23-1409, 2024 WL 5153199, at *9–10 (Iowa Ct. App. Dec. 18, 2024); Brandon L. Garrett & Peter J. Neufeld, *Invalid Forensic Science Testimony and Wrongful Convictions*, 95 Va. L. Rev. 1 (2009); Jennifer L. Mnookin, *The Courts, the NAS, and the Future of Forensic Science*, 75 Brook. L. Rev. 1209 (2010); Aaron Olson & Charles Ramsay, *Errors in Toxicology Testing and the Need for Full Discovery*, Forensic Science International: Synergy, Vol. 11, Article 100629 (2025).

Under these circumstances, I conclude the district court abused its discretion by denying Withers' motion to continue trial and prejudiced him. I therefore respectfully dissent.

Tabor, C.J., joins this dissent.